United States District Court
Southern District of Texas
**ENTERED**
September 26, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Debra Smith, § | | |
| § | | |
| *Plaintiff,* § | | |
| § | Civil Action No. 4:21-cv-02863 | |
| v. § | | |
| § | | |
| Kilolo Kijakazi, § | | |
| Acting Commissioner of Social § | | |
| Security, § | | |
| § | | |
| *Defendant.* § | | |

## MEMORANDUM AND ORDER

This is an appeal from an administrative ruling that denied Plaintiff Debra Smith's request for Medicare and social security benefits, which was transferred to the undersigned judge upon consent of the parties. Dkt. 7. After carefully considering the parties' briefs, the administrative record, and the applicable law, the Court grants Defendant Kilolo Kijakazi's Motion for Summary Judgment, Dkt. 12, and denies Smith's Motion for Summary Judgment, Dkt. 14.

## Background

Smith filed for Medicare benefits as a state employee and for social security benefits under Title XVI on December 4, 2018, claiming a disability onset date of November 1, 2017. R.10. When Smith filed for benefits, she was

50 years old, R.17, and had worked as a cook for over sixteen years. R.86-87, 220. She allegedly stopped working because foot issues prevented her from standing. R.230. Her claim was denied initially and again upon reconsideration. R.17. After a hearing, the administrative law judge (ALJ) issued a decision denying Smith benefits. *See* R.10-19.

At the hearing, Smith testified that she had worked in 2019 and 2020 as a home health aide for her brother, who lived with her. R.84-85. She assisted him seven days a week for four hours each day, though she testified that she needed to be relieved after that time because she could not stand for long periods. R.85. She testified that she treated her feet at home by elevating them and soaking them in Epsom salt. R.88. She was also prescribed pain medication for her left foot and believed she would also be having surgery on her right foot to remove bone spurs. *Id.* She admitted, however, that she had not sought medical attention for her right foot yet. R.89. When asked about her daily routine, she testified that she could not drive and rarely left the house but was able to take care of her personal hygiene and perform limited household chores. R.85-86, 88-89.

On May 21, 2021, the ALJ issued an opinion finding that Smith was not disabled. R.10-19. At steps one and two, the ALJ found that Smith met the insured status requirements for Medicare and that she had not engaged in substantial gainful activity since her alleged onset date. R.12. At step three,

2

the ALJ found that Smith suffered from the severe impairments of Achilles tendonitis and status post-surgery for her Achilles. *Id.* But the ALJ further concluded that Smith's severe impairments did not meet or medically equal a limited impairment in 20 C.F.R. Pt. 404, Subpt. P, App'x 1. R.13.

The ALJ then determined that Smith had a residual functional capacity (RFC) to perform light work, "except she can occasionally operate foot controls bilaterally" and "can occasionally climb ramps and stairs, but … can never climb ladders, ropes, or scaffolds." R.14. The ALJ also found that Smith "can never work at unprotected heights, with moving mechanical parts, in extreme cold, or in extreme heat." *Id.* In formulating Smith's RFC, the ALJ reviewed treatment notes from Smith's long-term healthcare provider, Dr. Juan Garcia and deemed the medical opinions of Smith's other treating physicians unpersuasive. R.14-15. The ALJ reasoned that Smith had received ankle surgery after she filed for benefits, and her symptoms improved significantly since then. R.16. Given this RFC, the ALJ found that Smith could hold jobs that were available in the national economy, including those identified by the vocational expert who testified at the hearing. R.17-18. This included jobs such as marker or routing clerk. R.18.

Smith unsuccessfully appealed the ALJ's decision to the Social Security Administration's Appeals Council, R.1-3, which rendered the ALJ's decision ripe for this Court's review. *See* 42 U.S.C. § 405(g); *Sims v. Apfel*, 530 U.S. 103,

3

106-07 (2000) ("[Social Security Administration] regulations provide that, if ... the [Appeals] Council denies the request for review, the ALJ's opinion becomes the final decision.").

## Standard of Review

A reviewing court assesses the Commissioner's denial of social security benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (per curiam) (internal quotation marks omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It is "more than a scintilla, but it need not be a preponderance." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (quoting *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)).

When conducting its review, the Court cannot reweigh the evidence or substitute its judgment for the Commissioner's. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). But judicial review must not be "so obsequious as to be meaningless." *Brown*, 192 F.3d at 496 (quotations omitted). The court must scrutinize the record as a

whole, taking into account whatever fairly detracts from the weight of evidence supporting the Commissioner's findings. *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

## Analysis

### I. Legal Framework

"The Commissioner uses a sequential, five-step approach to determine whether a claimant is ... disabled: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity." *Morgan v. Colvin*, 803 F.3d 773, 776 (5th Cir. 2015) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)) (footnote omitted). Before moving from step three to four, the ALJ determines the claimant's residual functional capacity, which is used to evaluate steps four and five. *Id.* at 776 n.2 (quoting 20 C.F.R. § 404.1520(a)(4)).

"Under this five-step approach, if the Commissioner determines at a prior step that the applicant is or is not disabled, the evaluation process stops ...." *Id.* at 776 (citing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden of proof at the first four steps. *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017). At the fifth step, the burden of proof shifts to the Commissioner

"to establish the existence of other available substantial gainful employment that a claimant can perform." *Id.* at 753-54.

## II. <u>The ALJ's determination was supported by substantial evidence.</u>

On appeal, Smith argues that substantial evidence does not support the ALJ's RFC determination because he disregarded medical opinions from her treating providers, Drs. Eric Blanson and Lan Dinh Ngo. Because Smith did not carry her burden of establishing that the ALJ erred, her motion is denied.

### A. The ALJ properly found Dr. Blanson's opinions unpersuasive.

Smith first argues that the ALJ erred in finding Dr. Blanson's medical opinions unpersuasive. Dkt. 15 at 6. According to Smith, the ALJ would have limited her to sedentary work or included additional exertional limitations in the RFC, had Dr. Blanson's opinions about Smith's mobility and postural limitations been credited differently. *Id.* at 8-9. Smith then detailed the medical records surrounding her ankle surgeries, *id.* at 9-13, proffering them as "objective evidence of medical impairments, which … [can] reasonably be expected to cause Plaintiff's symptoms and limitations," *id.* at 15.

Smith's argument is meritless, however, because the standard is not whether countervailing evidence supports the claimant's disability. The ALJ has the right to weigh evidence and was entitled to resolve any conflict against Smith. *Perez*, 415 F.3d at 461. This Court cannot disturb the ALJ's

6

formulation of Smith's RFC unless the determination was not supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Greenspan*, 38 F.3d at 236. Because the record supports the ALJ's determination, there was no error.

Smith points to a number of visits with Dr. Blanson where she sought treatment for left heel pain, swelling, and difficulties bearing weight and standing. Dkt. 15 at 10-11. But most of these visits occurred in fall 2018, before she underwent two surgeries to address her Achilles issues. R.329-32 (Sept. 28, 2018 visit), R.326-28 (Oct. 9, 2018), R.320-23 (Nov. 16, 2018 heel repair surgery), R.500-01 (Dec. 21, 2018 post-surgery follow up visit). When Smith fell and re-injured her left heel, Dr. Blanson performed a second surgery in January 2019. R.498-99.

As the ALJ concluded, the second surgery appeared successful. R.15. Even though Smith's immediate post-operational visits indicated lingering swelling and pain, R.494-97, that swelling had improved eight weeks after the surgery, at which point Dr. Blanson recommended transitioning to full weight-bearing ambulation with the guidance of a physical therapist, R.492-93. Twelve weeks after her surgery, Smith was able to ambulate without a CAM walker (or "boot") and reported only 2/10 pain. R.490-91. Fifteen weeks after surgery, she reported attending physical therapy and being able to bear her

7

full weight at home without any assistance. R.488. And despite the continued swelling, she reported no pain. *Id.*

Moreover, the ALJ accurately noted that Smith's more recent medical records indicated that her left heel has either improved—or, at minimum, that she did not seek further treatment for it. *See, e.g.*, R.416 (Aug. 24, 2020 visit to treat hypertension, noting Smith's normal gait); R.420 (Sept. 11, 2020 examination of blisters on her hands and feet); R.422 (Sept. 25, 2020 follow-up examination for skin abnormalities on her hands); R.424 (Feb. 8, 2021 follow-up for hypertension, noting normal gait); R.426 (Mar. 8, 2021 follow-up for hypertension, noting normal gait). The ALJ properly weighed evidence of this improvement when evaluating the consistency of Dr. Blanson's opinions with the medical record, as "an impairment [that] reasonably can be remedied or controlled by medication or therapy … cannot serve as a basis for a finding of disability." *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988).

Smith provided countervailing evidence at the hearing, testifying that she still struggled to stand and ambulate and needed to elevate her feet often. R.85, 88. But this testimony—even combined with her pre-surgery records—is insufficient to demonstrate error because the ALJ was entitled to resolve the conflict between her favorable evidence and the objective medical records. *Perez*, 415 F.3d at 461; *see also Parker v. Barnhart*, 431 F. Supp. 2d 665, 673-74 (E.D. Tex. 2006) (the ALJ did not commit error in formulating the RFC

despite discrediting a claimant's subjective testimony that he needed to elevate his feet to manage pain and instability). The ALJ did exactly that when he determined: "The objective medical evidence revealed that the claimant, in April 2019, indicated that she was doing better after surgery…. In February and March 2021, … the claimant had normal gait and no edema, which does not support foot elevation or other limitations opined by Dr. Blanson." R.15.

Accordingly, the ALJ committed no error when he found Dr. Blanson's opinions to be inconsistent with the medical records. His persuasiveness determination was supported by substantial evidence, notwithstanding Smith's recent subjective testimony.

### B. The ALJ properly found Dr. Ngo's opinions unpersuasive.

Smith also argues that the ALJ erred in finding opinions by her podiatrist, Dr. Ngo, unpersuasive because the ALJ should not have weighed the length of her relationship with Dr. Ngo. Specifically, Smith argues that the nature of the treating relationship between her and Dr. Ngo may have only been considered if the ALJ needed to conduct a "tie-break" between two conflicting, equally persuasive medical opinions. Dkt. 15 at 14. If Dr. Ngo's opinions had been deemed persuasive, Smith argues that the RFC would have included additional limitations. *Id.* at 7-9. Though Smith correctly identifies the relevant regulations for evaluating medical opinions, *id.* at 4-6, her application thereof is flawed.

For claims filed on or after March 27, 2017, the Social Security Administration requires ALJs to explain how they evaluate a medical opinion's persuasiveness. *See Shugart v. Kijakazi*, 2022 WL 912777, at *3 (S.D. Tex. Mar. 29, 2022) (citing 20 C.F.R. §§ 404.1520c, 416.920c). "In evaluating persuasiveness, the ALJ considers five factors: (i) supportability; (ii) consistency; (iii) the source's relationship with the patient; (iv) the source's specialty; and (v) 'other factors that tend to support or contradict' the opinion." *Id.* (citing and quoting 20 C.F.R. § 404.1520c(c)). Among those factors, the most important are supportability and consistency, so ALJs are *required* to explain the supportability and consistency of every medical source who rendered medical opinions. 20 C.F.R. § 404.1520c(b)(2). ALJs "*may, but are not required to*, explain how [they] considered the factors in paragraphs (c)(3) through (c)(5)." *Id.* (emphasis added). Paragraph (c)(3) sets forth how an ALJ is to evaluate the medical professional's relationship with the claimant, including the (i) length of the treatment relationship, (ii) frequency of examinations, (iii) purpose of the treatment relationship, (iv) extent of the treatment relationship, and (v) examining relationship. *Id.* § 404.1520c(c)(3).

Smith lacks any textual basis for her argument that the ALJ prematurely weighed the nature of the relationship (the third factor) when there are no medical opinions that are "tied" in supportability and consistency (the first two factors). *See* Dkt. 15 at 14. The regulations contemplate "equally

10

persuasive medical opinions," but that subsection does not supersede the prior subsection permitting the ALJ to articulate his position on all five factors. *Id.* § 404.1520c(b)(3). Rather, in the event of a "tie," the ALJ's explanation of the latter three factors becomes compulsory rather than discretionary. *Id.* ("When we find that two or more medical opinions ... about the same issue are both equally and well-supported ... and consistent with the record ... but are not exactly the same, we *will articulate* how we considered the most persuasive factors in paragraphs (c)(3) through (c)(5).") (emphasis added).

The ALJ's persuasiveness determination was therefore not erroneous, as the regulations explicitly enabled him to consider the nature and length of Dr. Ngo's relationship with Smith. *Id.* § 404.1520c(b)(2)). This is particularly true, given that the ALJ provided the requisite explanation about the supportability and consistency of Dr. Ngo's opinions. R.16. The ALJ pointed out that Dr. Ngo treated Smith from only June 2017 to September 2017, which constituted a mere "snapshot" of Smith's health that failed to account for inconsistent evidence and later developments such as her successful surgery, improved extremity strength, and normal gait. R.16. The ALJ discussed this evidence of Smith's improvements when analyzing Dr. Blanson's opinions and expressly incorporated that evidence when addressing and discounting Dr. Ngo's opinions. R.16; *see also supra* Section II(A).

11

Accordingly, the Court finds that the ALJ's determination about Dr. Ngo was supported by the medical record and explained in a manner consistent with 20 C.F.R. § 404.1520c. The ALJ's RFC determination is therefore affirmed.

## Conclusion

The Court finds that the ALJ's RFC determination was supported by the record and that Smith's point of error must be overruled. Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment (Dkt. 12) and **DENIES** Plaintiff's Motion for Summary Judgment (Dkt. 14). It is therefore **ORDERED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

Signed on September 26, 2022 at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge